IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILIAN TAVERAS GOMEZ, *et al.*, | |
| Plaintiffs, | No. 3:08-CV-619 |
| v. | (Judge Caputo) |
| WILLIAM J. FEISSNER, *et al.*, | |
| Defendants. | Electronically Filed |

### BRIEF IN SUPPORT OF MOTION OF DEFENDANTS WINTERS, ZOLA, FEISSNER, AND GALLAGHER FOR SUMMARY JUDGMENT

### STATEMENT OF THE CASE

A.   Facts

This civil action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983,[1] arises from a law enforcement operation to arrest drug dealers in the vicinity of Hazleton, Pennsylvania.  Defendants filed a Statement of Material and Undisputed Facts ("SMF") on July 29, 2010.  (Doc. 53).  In the interest of judicial economy, defendants will not re-state those facts here but will incorporate the Statement of Material and Undisputed Facts by reference.

---

[1]   There is no dispute that defendants Winters, Zola, Feissner, and Gallagher were acting under color of state law at the time of the events in this case.

B.  Procedural History

Plaintiffs commenced this action by filing a complaint on April 7, 2008. (Doc. 1).  Plaintiffs filed an amended complaint on August 5, 2008.  (Doc. 10). The amended complaint named as defendants seventeen state and local law enforcement officers ("the Commonwealth Defendants") and two agents of the federal government.  The Commonwealth Defendants filed an answer to the amended complaint on September 3, 2008.  (Doc. 13).  The federal defendants filed an answer on April 28, 2009.  (Doc. 20).  The parties engaged in discovery. On July 26, 2010, this Court entered an order adopting the stipulation of the parties to voluntarily dismiss with prejudice thirteen of the Commonwealth Defendants. The remaining Commonwealth Defendants – Joshua Winters, Jason Zola, William Feissner, and Gerry Gallagher – filed a motion for summary judgment on July 29, 2010.  (Doc. 52).  This brief supports that motion.

**QUESTIONS PRESENTED**

I.  Whether plaintiffs cannot establish an illegal entry claim under the Fourth and Fourteenth Amendments.

II.  Whether the temporary detention of plaintiffs during a search of the premises was objectively reasonable under the Fourth Amendment.

III.  Whether the seizure of plaintiffs' property was objectively reasonable under the circumstances.

IV.  Whether plaintiffs cannot establish that the conduct of Winters, Zola, Feissner, or Gallagher was based on the plaintiffs' race.

    V.    Whether defendants are entitled to qualified immunity from plaintiffs' claim for damages.

## ARGUMENT

### I. PLAINTIFFS CANNOT ESTABLISH AN ILLEGAL ENTRY CLAIM UNDER THE FOURTH AND FOURTEENTH AMENDMENTS.

Along with several other officers from a tactical entry team, defendant Zola entered the front door of 11 West Monroe Avenue pursuant to a lawful search warrant. (SMF 6-9, 16-18). After Zola and his entry team accounted for all of the building's occupants, defendants Winters, Feissner, and Gallagher assisted with the search pursuant to the lawful search warrant. (SMF 35-36, 50, 62). All of plaintiffs' claims are based on the assumption that the entry of their living space was unlawful and beyond the scope of the search warrant. The officers were entitled to secure and search all rooms that were accessible after entering the door to 11 West Monroe Avenue. Because there was no discernible internal barrier between 11 West Monroe and the space labeled by plaintiffs as 9 West Monroe Avenue, the entry by defendants into plaintiffs' living space was objectively reasonable.

    A.    <u>No Fifth or Fourteenth Amendment Claim</u>

The amended complaint bases the claims relating to the entry, search, and seizures on the "Fourth, Fifth, and Fourteenth Amendments." (Amended Complaint, Doc. 10, ¶¶42-50). Where a particular Amendment provides an

explicit textual source of constitutional protection against a particular governmental behavior, that Amendment, and not the more generalized notion of substantive due process, must be the guide for analyzing these claims. *Albright v. Oliver*, 510 U.S. 266, 273 (1994); *O'Malley v. Lukowich*, No. 3:08-CV-0680, 2008 WL 4861477 *6-7 (M.D. Pa. Nov. 7, 2008) (Caputo, J.). Because the Fourth Amendment specifically applies to claims of improper searches and seizures by law enforcement officers, the Fifth and Fourteenth Amendments are inapplicable. *Id.*

    B.    <u>No Illegal Entry Claim</u>

The Fourth Amendment protects individuals from "unreasonable searches and seizures." U.S. CONST. amend. IV. Searches and seizures conducted without a warrant are *per se* unreasonable under the Fourth Amendment. *United States v. Williams*, 413 F.3d 347, 351 (3d Cir. 2005) (citing *United States v. Ross*, 456 US. 798, 824-25 (1982)). "It must always be remembered that what the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures[.]" *United States v. Ritter*, 416 F.3d 256, 261-62 (3d Cir. 2005) (quoting *Elkins v. United States*, 364 U.S. 206, 222 (1960)). The Fourth Amendment requires no more than that the magistrate who issues the search warrant have a "substantial basis" for concluding that probable cause exists. *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)).

Defendants Eppley and Christino support their motion for summary judgment with exhibits that include the search warrant affidavit that was submitted to obtain the search warrant for 11 West Monroe Avenue. Because there was extensive evidence of illegal drug activity at that address, a lawful search warrant was issued. (SMF, Exhibit A-1). Each of the moving Commonwealth Defendants entered the building through a door clearly marked as 11 West Monroe Avenue.

The crucial issue is whether the defendants were permitted to secure and search the entire space within the building that was reasonably accessible from the front door of 11 West Monroe, even if plaintiffs contend that they have separate living units inside the building that were searched by the defendants. During a search pursuant to a warrant, executing officers are permitted open containers and examine spaces where the items named in the warrant "may reasonably be found." *United States v. Jackson*, 508 F.Supp.2d 422, 429 (M.D.Pa. 2007) (Conner, J.) (quoting *United States v. Newman*, 685 F.2d 90, 92 (3d Cir. 1982)). The Supreme Court has explained that "distinctions between closets, drawers, and containers . . . must give way to the interest in the prompt and efficient completion of the task at hand." *Id.* (quoting *United States v. Ross*, 456 U.S. 798, 821 (1982)).

This Court has explained that "when an executing officer knows or should know that there are separate dwellings contained in the property to be searched, he or she is 'obligated to either limit the search to those areas clearly covered by the

warrant or to discontinue entirely [his or her] search." *Id.* (quoting *Ritter*, 416 F.3d at 266; *Maryland v. Garrison*, 480 U.S. 79, 87 (1987)); *see also Harman v. Pollock*, 586 F.3d 1254 (10th Cir. 2009). In this case, defendant Feissner considered the possibility that there were more than one unit inside the door marked as 11 West Monroe Avenue. (SMF 11, 14). Feissner, however, learned from Guerrero on the morning of the search that there was only one door at the top of the stairs inside the door marked with the number "11." (SMF 15).

Defendants entered the door marked as 11 West Monroe Avenue with the knowledge that extensive surveillance showed Guerrero entering and exiting that door and that Guerrero himself indicated that there was only one apartment inside that door. Accordingly, it is irrelevant that a door on the side of the building was marked as 9 West Monroe, because defendants had no intention of entering that door. No external indicia of residential units other than the number "11" on the front door mattered to the reasonableness of the search.

The only question is whether defendants should have known that a separate residential unit would lie beyond the interior door located in the second-floor bathroom. (SMF, Exhibit B-1, pages 2-3). The door in the bathroom that allegedly separated 9 and 11 West Monroe was not boarded up or otherwise barricaded; it was an interior door of the kind commonly used in shared bathrooms or for closets or attics. (SMF 48). The bathroom door could only be locked by a

bolt mechanism that suggested the person on that side of the door (*i.e.*, Guerrero) had access to the other side. (*Id.*). No force was necessary to open the door, because it was unlocked. (SMF 21). Only after Zola and the Special Operations Group had departed the building and after Feissner had conducted the search with assistance from Winters and Gallagher did Feissner learn that one of the plaintiffs told an ICE agent that there were two separate residences in the building. (SMF 46).

Not only did none of the Commonwealth Defendants know that there were two separate residences inside the building, but there was no way that they could have known that information based only on a common interior door in the bathroom. Accordingly, the entry and search of all spaces reasonably accessible from the front door of 11 West Monroe Avenue was reasonable under the Fourth Amendment.

### II. THE TEMPORARY DETENTION OF PLAINTIFFS DURING A SEARCH OF THE PREMISES WAS OBJECTIVELY REASONABLE UNDER THE FOURTH AMENDMENT.

The Third Circuit has explained that "[a]ll claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *McCracken v. Freed*, 243 Fed.Appx. 702, 708 (3d Cir. 2007) (quoting *Graham v. Connor*, 490 U.S. 386, 394

(1989)); *Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004). The Fourth Amendment applies, however, only if the person claiming its protection was the subject of a seizure. *Id.* (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 843-44 (1998)). A Fourth Amendment seizure involves "a termination of freedom of movement through means intentionally applied." *Id.* (quoting *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989)).

Plaintiffs claim that they were subjected to an unreasonable seizure when they were gathered by the officers in the kitchen of 11 West Monroe Avenue while the officers searched the residence, during which time Wilian and Wilfredo Taveras were handcuffed. In *Michigan v. Summers*, 452 U.S. 692, 705 (1981), the Supreme Court held that "a warrant to search for contraband founded upon probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." The *Summers* Court reasoned that allowing law enforcement officers to "routinely exercise unquestioned command of the situation" by detaining the occupants would minimize many of the risks attendant to searches, such as flight by suspects, destruction of evidence, and harm to the officers." *Id.* at 702-03; *see also Muehler v. Mena*, 544 U.S. 93, 98 (2005) ("[a]n officer's authority to detain incident to a search is categorical; it does not depend on the 'quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure.'").

Because the entry and search of the plaintiff's residence was lawful, the detention of the plaintiffs during that search was also lawful.  Plaintiffs cannot establish an unreasonable seizure, and defendants are entitled to summary judgment in their favor.

With regard to Wilfredo Taveras, defendant Gallagher was asked by a member of the task force to take Wilfredo to the National Guard armory.  (SMF 53).  Although Gallagher does not remember who asked him to take Wilfredo to the armory or the specific reason for doing so, Gallagher is entitled to rely upon a fellow law enforcement officer for purposes of having probable cause to take Wilfredo into custody.  More important, this was a very limited detention by Gallagher, because he only drove Wilfredo to the other side of town, where he left Wilfredo in the custody of unidentified officers at that location.  (SMF 54).  Although Wilfredo was not free to leave for three hours, he was not in Gallagher's custody during that time.

To the extent that plaintiff Barbara Gomez asserts a claim that excessive force was used against her, that claim also fails.  Plaintiff Barbara Gomez is the grandmother of plaintiffs Wilfredo Taveras and Wiliana Taveras.  (Amended Complaint at ¶¶6-7).  The amended complaint alleges that "[t]he search and detention included throwing the grandmother to the floor so as to injure her eye

…" (Amended Complaint at ¶¶1, 20). The deposition testimony of Barbara Gomez does not, however, support that allegation.

According to her testimony, an unidentified officer told her to get on the ground, but no officer pushed her to the ground. (SMF 25). The Third Circuit's excessive force jurisprudence certainly permits far more aggressive treatment than was involved in this case with Barbara Gomez. *See Sharrar v. Felsing*, 128 F.3d 810, 821 (3d Cir. 1997); *Mellott v. Heemer*, 161 F.3d 117 (3d Cir. 1998) (reasonable for officers to load and point weapons and push occupant into a chair in an effort to discourage expected resistance to eviction); *Mar v. City of McKeesport*, No. 05-19, 2007 WL 1556911 (W.D.Pa. May 25, 2007). Plaintiff Barbara Gomez simply cannot establish a claim of excessive force against any of the defendants.

### III. THE SEIZURE OF PLAINTIFFS' PROPERTY WAS OBJECTIVELY REASONABLE UNDER THE CIRCUMSTANCES.

To the extent that plaintiff Wilian Taveras alleges that his property was seized in violation of the Fourth Amendment, the claim fails because the entry and search of the residence were lawful. The search warrant specifically authorizes the officers to seize currency. (SMF, Exhibit A-1). It is undisputed that currency in the amount of $605 was seized from the bedroom of Wilian Taveras Gomez. (SMF 42). Because this seizure was explicitly authorized by the search warrant

and was executed in a reasonable fashion, the seizure of the currency does not violate the Fourth Amendment.

### IV. PLAINTIFFS CANNOT ESTABLISH THAT THE CONDUCT OF WINTERS, ZOLA, FEISSNER, OR GALLAGHER WAS BASED ON THE PLAINTIFFS' RACE.

The amended complaint contains claims under 42 U.S.C. §§ 1981(a), 1985(3), 1986 based on the assumption that plaintiffs were treated differently because of their "Hispanic origin." (Amended Complaint at ¶¶3, 50-55). To establish a claim under § 1981, a plaintiff must establish: (1) that he is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute.[2] *Estate of Oliva v. New Jersey*, 604 F.3d 788, 797-98 (3d Cir. 2010); *Rossi v. Wyoming Valley Health Care Sys.*, No. 3:09-CV-0179, 2010 WL 2766343 *4 n.1 (M.D.Pa. July 13, 2010) (Caputo, J.) (citing *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 797 (3d Cir. 2001)).

In order to establish a claim under § 1985(3), plaintiffs must show (1) a conspiracy; (2) motivated by a racial or class-based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the

---

[2] The statute states as follows: "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a).

equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.  *Roach v. Marrow*, No. 3:08-CV-1136, 2009 WL 3103781 *5 (M.D.Pa. Sept. 24, 2009) (Vanaskie, J.) (citing *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997)).

The existence of a conspiracy in violation of § 1985 is a prerequisite for a cognizable § 1986 claim.  *Galvani v. Pennsylvania*, No. 1:08-CV-0393, 2008 WL 4821748 *5 (M.D.Pa. Nov. 4, 2008) (Conner, J.) (citing *Robison v. Catnerbury Vill., Inc.*, 848 F.2d 424, 431 n.10 (3d Cir. 1988); *Pearson v. Miller*, 988 F. Supp. 848, 859 (M.D.Pa. 1997) ("No claim can be maintained under section 1986 unless a cause of action has been established under section 1985.")).  Once a § 1985(3) conspiracy is established, § 1986 liability will attach only if a plaintiff demonstrates that the defendant knew about the conspiracy and had the power to prevent it.  *Id.* (citing *Clark v. Clabaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994); *Conroy v. City of Phila.*, 421 F.Supp.2d 879, 888 (E.D.Pa. 2006)).

Plaintiffs have not alleged a conspiracy, much less discovered any evidence of one.  The only statement that could be construed as evidence of discrimination on the basis of race was a statement made by an officer other than Winters, Feissner, Zola, or Gallagher.  That alleged statement involved plaintiffs not being citizens of the United States, and "national origin discrimination" is not covered by

Sections 1985(3) or 1986. Put simply, there is no evidence that Winters, Zola, Feissner, or Gallagher took any action based on the race of the plaintiffs, much less doing so in a conspiracy.

## V.  DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY FROM PLAINTIFFS' CLAIM FOR DAMAGES.

Qualified immunity "is an entitlement not to stand trial or face the other burdens of litigation." *Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir. 2002). Qualified immunity is intended to provide "ample protection to all but the plainly incompetent or those who knowingly violate the law." *Blackhawk v. Pennsylvania*, 381 F.3d 202, 215 (3d Cir. 2004) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Qualified immunity "shield[s] [government agents] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *McGreevy v. Stroup*, 413 F.3d 359, 364 (3d Cir. 2005).

The Supreme Court in *Harlow* adopted a criterion of "objective legal reasonableness." *Harlow*, 457 U.S. at 819; *Doe v. Delie*, 257 F.3d 309, 318 (3d Cir. 2001). Thus, the presence or absence of malice on the part of the defendant is irrelevant as long as that defendant acted in an objectively reasonable manner under the law as it was established and given the information available to the defendant. *Harlow*, 457 U.S. at 818; *Malley*, 475 U.S. at 341.

Determining whether a state actor is entitled to the affirmative defense of qualified immunity generally involves two inquiries: (1) whether the facts alleged show that a state actor violated a constitutional right, and (2) whether the constitutional right was clearly established so that a reasonable person would know that the conduct was unlawful. *Bayer v. Monroe Cty. Children & Youth Servs.*, 577 F.3d 186, 191 (3d Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Courts have "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 129 S.Ct. 808, 818-822 (2009).

A right is clearly established if there is "sufficient precedent at the time of the action, factually similar to the plaintiff's allegations, to put [the] defendant on notice that his or her conduct is constitutionally protected." *McKee v. Hart*, 436 F.3d 165, 171 (3d Cir. 2006) (quoting *McLaughlin v. Watson*, 271 F.3d 566, 572 (3d Cir. 2001)). The law must be clearly established with a high degree of specificity. In order to be clearly established, the "relevant principles" must "apply with obvious clarity to the specific conduct in question" or a "closely analogous case" must hold that the conduct is unconstitutional and "no reasonable official could have distinguished" it. *Hope v. Pelzer*, 536 U.S. 730, 739-40 (2002). The question requires that the "inquiry must be undertaken in light of the specific

context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001).

Plaintiffs assume that defendants Winters, Zola, Feissner, and Gallagher exceeded the scope of the search warrant by entering plaintiffs' living space, which they labeled as 9 West Monroe Avenue. These officers, however, reasonably believed that, after entering the door clearly marked as 11 West Monroe Avenue, there was no internal barrier that would indicate that separate residential units had been established in the building. Not only were there no internal barriers to indicate that the officers may be exceeding the scope of the search warrant, but also the officers reasonably believed that they must inspect every room that was reasonably accessible to ensure the safety of all officers during the search.

To the extent that they were incorrect about their lawful authority, they are entitled to qualified immunity. In the context of suppression motions and the exclusionary rule, the Supreme Court created a "good faith" exception, "recognizing that law enforcement officers who act in the good faith belief that their conduct does not violate the Fourth Amendment need not be deterred." *Jackson*, 508 F.Supp.2d at 427-28 (quoting *United States v. $92,422.57*, 307 F.3d 137, 145 (3d Cir. 2002)). These defendants acted at all times with the good faith belief in their authority to search the premises and detain the occupants of the

building during the search. If they were wrong, they should nonetheless be shielded from liability.

## CONCLUSION

For each of the foregoing reasons, the motion of defendants Joshua Winters, Jason Zola, William Feissner, and Gerry Gallagher for summary judgment should be granted.

**Respectfully submitted,**

**THOMAS W. CORBETT, JR.**
**Attorney General**

**By:** *s/ Patrick S. Cawley*

**OFFICE OF ATTORNEY GENERAL**  **PATRICK S. CAWLEY**
**Civil Litigation Section** **Deputy Attorney General**
**15th Floor, Strawberry Square** **PA 85575**
**Harrisburg, PA 17120**
**Direct: (717) 783-3146** **SUSAN J. FORNEY**
**Fax: (717) 772-4526** **Chief Deputy Attorney General**
**Chief, Civil Litigation Section**

**Date: July 29, 2010**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WILIAN TAVERAS GOMEZ,** *et al.*, | |
| Plaintiffs, | No. 3:08-CV-619 |
| v. | **(Judge Caputo)** |
| **WILLIAM J. FEISSNER,** *et al.*, | |
| Defendants. | **Electronically Filed** |

## CERTIFICATE OF SERVICE

I, Patrick S. Cawley, Deputy Attorney General for the Commonwealth of Pennsylvania, hereby certify that on July 29, 2010, I caused to be served a true and correct copy of the foregoing Brief in Support of Motion of Defendants Winters, Zola, Feissner and Gallagher for Summary Judgment to the following:

**VIA ELECTRONIC FILING**

| | |
|---|---|
| Laurence E. Norton, II, Esq. | Timothy S. Judge, Esquire |
| Community Justice Project, Inc. | Assistant U.S. Attorney |
| 118 Locust Street | 235 N. Washington Avenue |
| Harrisburg, PA 17101 | Scranton, PA 18507 |
| *Counsel for Plaintiffs* | *Counsel for Defendants Eppley and Christino* |

                                    *s/ Patrick S. Cawley*
                                    **PATRICK S. CAWLEY**
                                    **Deputy Attorney General**